IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **THE CINCINNATI SPECIALTY** | : | **CIVIL ACTION** |
| **UNDERWRITERS INSURANCE** | : | |
| **COMPANY** | : | |
| | : | |
| **v.** | : | **NO.  24-3871** |
| | : | |
| **MAINLINE PRIVATE SECURITY,** | : | |
| **LLC,** *et al.* | : | |

## MEMORANDUM

**MURPHY, J.**                                                    **December 16, 2025**

In two calamitous incidents, young men — Eric Pope and Rishabh Abhyankar — were brutally attacked after nights out in Philadelphia.  Tragically, Mr. Pope died.  His attacker was criminally charged.  And Mr. Pope's estate and Mr. Abhyankar sued their respective attackers, the bars they attended, and the company that provided security to these establishments: Mainline Private Security, LLC (Mainline).  This, however, is neither a criminal matter nor an injury case for damages; it is an insurance coverage dispute.

Unsurprisingly, the market for insurance on security guards is constrained.  Mainline purchased insurance from the Cincinnati Specialty Underwriters Insurance Company (CSU).  The insurance came with an important exclusion that limited coverage for claims arising out of assault and battery to $250,000.  Now that Mainline has exhausted that coverage, CSU asks us for a declaratory judgment that they are not obligated to defend or indemnify Mainline (or an additional insured party, Mikey II) for the Pope and Abhyankar lawsuits.  This type of dispute often comes down to a careful comparison between the policy exclusion language and the allegations made in the underlying tort actions.  So too here, where the focus is whether the underlying complaints allege facts grounded in negligence that fall outside the assault and

battery exclusion.  We conclude that they do not, and therefore, CSU's assault and battery

exclusion encompasses the related negligence claims.  It is not lost on us that this conclusion

may affect more than merely "who pays."  But there is no other result permissible.  We grant

summary judgment in favor of CSU.

I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Mainline Private Security, LLC (Mainline) provides security guard services to bars and

events in the Philadelphia area.  App. at 778.[1]  The company was founded in 2011.  *Id.*  In its

early years, Mainline purchased a general liability insurance policy from Philadelphia Insurance

Companies.  App. at 826.  However, by 2020, Philadelphia Insurance decided it no longer

wanted to operate in the bar and restaurant space, and so they notified Mainline that they were

not renewing the policy.  App. at 826-27.  Soon after, Mainline hired an insurance broker called

NFP to secure new coverage.  App. at 827-28.  Mainline settled on a policy from the Cincinnati

Specialty Underwriters Insurance Company (CSU).  *Id.*

CSU is an excess and surplus lines insurer, which means that they are a market of last

resort for high-risk companies that have trouble securing insurance in the traditional

marketplace.  App. at 735-36.  CSU issued to Mainline a commercial general liability policy —

Number CSU0151223 — with an initial policy period of May 25, 2020 to May 25, 2021 and a

second policy period from May 25, 2021 to May 25, 2022.[2]  App. at 444-684.

---

[1] All references to "App." refer to the appendix and supplemental appendix to CSU's
Statement of Undisputed Facts, cited as DI 76-2, 76-3, and 88-1 on the docket.  The page
numbers refer to the stamped numbers at the bottom right of the pages.

[2] The activities in question here concern the second policy period (May 2021-May 2022)
and thus we will focus exclusively on that policy.

CSU's coverage is detailed in the Commercial General Liability Coverage Form CG 00 01 04 13. App. at 605. Under Section I, CSU must (1) "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies" and (2) "defend the insured against any 'suit' seeking those damages." *Id.* The policy has a general liability coverage limit of $1,000,000 per occurrence. App. at 599.

CSU's coverage is limited by many exclusions, but the most pertinent one here is the "Assault or Battery with Limited Optional Coverage (Defense Within Limits)" exclusion. App. at 656. We will explore this provision in greater detail later, but in summary the exclusion says that "[t]his insurance does not apply to 'bodily injury' . . . arising out of . . . an actual or threatened assault or battery" and various other related claims. *Id.* The exclusion does provide an optional supplement — which Mainline purchased — providing coverage of up to $250,000 per occurrence and in the aggregate for claims "arising out of an actual or threatened assault or battery, a failure to provide adequate security, or a failure to prevent or suppress an assault or battery."[3] *Id.* The $250,000 limit is eroded through CSU's payments of judgments, settlements, and defense costs for these claims. App. at 656-57.

Mainline faced twelve claims from the 2021-2022 coverage period (DI 76 at ¶ 24), and two are relevant here. First, Heather and John Pope (the executors of the estate of Eric Pope) are suing Mainline, Mikey II, LLC, d/b/a Tabu Lounge and Sports Bar (Mikey II) and Kenneth Frye in the Pennsylvania Court of Common Pleas. App. at 150. Their amended complaint alleges

---

[3] Mainline also purchased coverage of up to $1 million for assault and battery claims at four specific bars: Misconduct Tavern (two locations), U Bar, and Blind Barber. App. 564-68, 851-54.

that shortly before 1:00am on April 16, 2022, Eric Pope was escorted out of Mikey II by security

and began to peacefully dance.  App. at 156.  Then, Kenneth Frye — one of Mainline' security

guards — "approached Mr. Pope and forcefully punched him in the head, completely without

provocation."  *Id.*  "The blow . . . caused Mr. Pope to fall backwards and violently strike the back

of his head on the ground" and Mr. Pope ultimately died from his injuries.  App. at 156-58.  Mr.

Frye faced criminal charges that, as of this writing, have not been resolved.  And the Popes sued

Mr. Frye, Mainline, and Mikey II for (1) negligence and recklessness and (2) assault and battery.

App. at 161-173.

Second, Rishabh Abhyankar is suing for injuries he suffered outside Tinsel and/or Finn

McCool's Ale House (the two establishments neighbor each other) on October 2, 2021.  App. at

186-87.  Specifically, he alleges that he was bullied by an intoxicated patron named Harriel

Rosario-Perez throughout the night, and when the two men exited the bar, Mr. Rosario-Perez

"picked [Mr. Abhyankar] up by his throat, lifted him up in the air and slammed him onto the

cement pavement headfirst, fracturing [his] skull and causing catastrophic injuries."  App. at 194.

Mr. Abhyankar sued Mr. Rosario-Perez for (1) negligence and (2) assault and battery and sued

Mainline (as well as the bars he attended) for negligence.  App. at 196-213.

CSU took the position that it was not obliged to defend the Pope and Abhyankar lawsuits

because the allegations asserted in these lawsuits fall entirely within the assault and battery

exclusion of their coverage.  So, CSU filed a complaint in our court asking for a declaratory

judgment to that effect.  DI 1 at ¶¶ 53-56.  CSU further wants us to declare that the $250,000

aggregate limit for assault and battery coverage has been exhausted, and thus CSU is not

obligated to defend or indemnify Mainline or Mikey II against these suits.[4]  *Id.* at ¶¶ 60-63.

CSU has moved for summary judgment.  Mainline, the Popes, and Mr. Abhyankar oppose.  They argue that the allegations of negligence in the underlying lawsuits are distinct from the allegations of alleged assault, and thus the coverage exclusion does not apply.  DI 80-2 at 4-5; DI 79-12 at 6 (ECF); DI 78-1 at 1-2.  The Popes and Mr. Abhyankar also contend that if the assault and battery exclusion encompasses their claims, then CSU's coverage is illusory and void as a matter of public policy.  DI 79-12 at 6-7 (ECF); DI 78-1 at 8-10.  The defendants request that we stay this action until liability has been determined in the underlying lawsuits.  We heard oral argument on all these issues on November 10, 2025.

## II.    STANDARD OF REVIEW

This is an action for declaratory judgment pursuant to 28 U.S.C § 2201.  We have jurisdiction based upon diversity of citizenship under 28 U.S.C. § 1332.  As a federal court sitting in diversity, we must apply substantive state law.  *Erie R.R. v. Tompkins*, 304 U.S. 64, 78

---

[4] A couple points on this.  First, Mikey II's coverage derives from an endorsement in CSU's policy that provides additional insurance to entities that have a written contract to perform work for Mainline.  *See* App. at 670-71; *see also* App. at 400-402, 409.

Second, CSU asks us to additionally declare that they do not have to defend or indemnify any other insured or potential insured.  *See* DI 75 at 25-26.  We find this language too broad to analyze, and thus we focus entirely on Mainline and Mikey II, who are certain policyholders.  If another party requests defense and indemnification under CSU's policy, CSU can exercise whatever options may be available to it at that time.

Finally, CSU asks us to declare that it is not obligated to defend or indemnify Mainline against allegations and claims asserted in a third civil action:  *Lance Imgrund and Shelley Santos, his wife v. Voyeur Night Club, Mayfield Social Club, Mainline Private Security, LLC, and Esbert LLC*, No. 240300831 (Pa. Ct. Com. Pl. Phila. Cnty., filed March 7, 2024).  However, the Imgrund action settled in November 2024, and so this claim is moot.  *See* DI 80-1 at 2 (ECF).

(1938); *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000). "In so doing, we are not free to impose our own view of what state law should be; we are to apply state law as interpreted by the state's highest court. In the absence of guidance from that court we are to refer to decisions of the state's intermediate appellate courts for assistance in determining how the highest court would rule." *McKenna v. Pacific Rail Serv*., 32 F.3d 820, 825 (3d Cir. 1994) (citation modified).

Here, there is no dispute that Pennsylvania law governs. *See Am. Auto. Ins., Co. v. Murray*, 658 F.3d 311, 320 (3d Cir. 2011) ("It is the function of the court to interpret insurance contracts under Pennsylvania law."). We will read CSU's policy as a whole, construe the contract's terms in accordance with their plain and ordinary meanings, and determine the intent of the parties as manifested by the language of the policy. *Id;* see *also Gene & Harvey Builders, Inc. v. Pennsylvania Mfrs. Ass'n Ins. Co.,* 517 A.2d 910, 913 (Pa. 1986). Clear and unambiguous language will be enforced. *Id.*

We grant summary judgment "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 248 (1986); *see also SodexoMAGIC, LLC v. Drexel Univ*., 24 F.4th 183, 203 (3d Cir. 2022). And a "genuine dispute" over a material fact means "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. This evidence can be "direct or circumstantial" and "must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Saldana v. Kmart Corp*., 260 F.3d 228, 232 (3d Cir. 2001) (quoting *Williams v.*

6

*Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).  However, "[u]nsupported

assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for

summary judgment."  *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).

## III.    ANALYSIS

### A.  CSU has no duty to defend or indemnify Mainline and Mikey II[5]

CSU has a duty to defend Mainline and Mikey II against the claims in the Pope and

Abhyankar lawsuits "if there is a chance that the injury alleged [in the third-party complaints]

could potentially fall within the scope of the policy."  *Selective Way Ins. Co. v. Hosp. Group*

*Services, Inc.*, 119 A.3d 1035, 1046 (Pa. Super. 2015).  CSU also has "a conditional obligation to

indemnify [Mainline and Mikey II] in the event the insured is held liable for a claim covered by

the policy."  *Allen*, 692 A.2d at 1095.  However, "[b]ecause the duty to defend is broader than

the duty to indemnify, there is no duty to indemnify if there is no duty to defend."  *Sikirica v.*

*Nationwide Ins. Co.*, 416 F.3d 214, 225 (3d Cir. 2005); *see also Am. Nat. Prop. & Cas.*

*Companies v. Hearn*, 93 A.3d 880, 884 (Pa. Super. 2014).

In analyzing CSU's duty to defend, we must accept all the allegations in the underlying

complaints as true even "if in reality the facts are completely groundless, false, or fraudulent."

*Erie Ins. Exch. v. Muff*, 851 A.2d 919, 926 (Pa. Super. 2004) (citation modified).  Furthermore,

"the particular cause of action that [the] complainant pleads is not determinative of whether

---

[5]  We note at the outset that "[t]he Declaratory Judgments Act may be invoked to
interpret the obligations of the parties under an insurance contract, including the question of
whether an insurer has a duty to defend and/or a duty to indemnify a party making a claim under
the policy." *Gen. Acc. Ins. Co. of Am. v. Allen*, 692 A.2d 1089, 1095 (Pa. 1997).  These are
questions of law susceptible to summary judgment. *Butterfield v. Giuntoli* 670 A.2d 646, 651
(Pa Super. 1995).

coverage has been triggered.  Instead it is necessary to look at the factual allegations contained in the complaint." *Mut. Ben. Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999).  Mainline and Mikey II have the initial burden of demonstrating that the policy covers the claims in the underlying lawsuits, however "the burden shifts to the insurer to establish an exclusion." *Giuntoli*, 670 A.2d at 651-52; *Madison Const. Co. v. Harleysville Mut. Ins. Co.,* 735 A.2d 100, 106 (Pa. 1999).

Here, the parties agree that the allegations in the Pope and Abhyankar complaints trigger CSU's coverage[6] and we concur:  The Popes allege that Mainline and Mikey II caused Mr. Pope's physical injuries and Mr. Abhyankar alleges the same with respect to Mainline. (App. at 302-311, 348-354).  These claims sufficiently trigger CSU's obligation under its general liability coverage form to "defend the insured against any 'suit'" for "bodily injury." App. at 605.  Thus, to sustain its defense, CSU has the burden of showing that the assault and battery exclusion encompasses these claims.  In analyzing this issue, we compare the allegations in the Pope and Abhyankar complaints to the policy exclusion.  *See Haver*, 725 A.2d at 746.

For reference, below is the key section of the assault and battery exclusion:

> This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:
>
> 1.    An actual or threatened assault or battery whether caused by or at the instigation or direction of any insured, their employees, patrons or any other person;
>
> 2.    The failure of any insured or anyone else for whom any insured is legally responsible to prevent or suppress assault or battery; or
>
> 3.    The failure to provide an environment safe from assault or

---

[6] CSU admitted as such in their reservation of rights letters that they sent to Mainline and Mikey II.  *See* App. at 381-395, 398-412, 413-425.

8

battery, including but not limited to the failure to provide adequate security, or failure to warn of the dangers of the environment that could contribute to assault or battery; or

4.      The failure to render or secure medical treatment or care necessitated by any assault or battery; or

5.      The negligent investigation or reporting or failure to report any assault or battery to proper authorities; or

6.      The negligent:
   a.      Employment;
   b.      Supervision;
   c.      Training;
   d.      Retention;

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by the **ASSAULT OR BATTERY** exclusion above.

App. at 656.

The meaning of this text is clear and unambiguous:  The exclusion is triggered for "bodily injury . . . arising out of . . . [a]n actual or threatened assault and battery" or for bodily injury arising out of the adjacent claims described in parts 2-6 of the exclusion.  Under Pennsylvania law, "a policy provision containing the phrase 'arising out of' is satisfied by 'but for' causation, i.e., a cause and result relationship."  *Gen. Refractories Co. v. First State Ins. Co*, 855 F.3d 152, 159 (3d Cir. 2017) (citation modified); *see also Madison Const. Co*. 735 A.2d at 110. Thus, for bodily injury to arise out of an assault and battery, the injury must be causally connected with an assault and battery.

CSU's policy does not define assault and battery, but these words have a common usage, and we also look to Pennsylvania law as a guide.  *See Liberty Surplus Ins. Corp. v. McFaddens at Ballpark LLC,* 116 F. Supp. 3d 447, 458 (E.D. Pa. 2015).  An individual is criminally liable

9

for assault if he "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another." 18 Pa. C.S. § 2701. Similarly, the tort of assault is defined as "an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994) (citation modified).

Here, taking the facts alleged in the underlying complaints as true, both Mr. Pope and Mr. Abhyankar's injuries arose out of an assault and battery. Starting with Mr. Pope's injuries, the complaint alleges that Mr. Frye "approached Mr. Pope and forcefully punched him in the head, completely without provocation." App. at 156. Later, "[t]he autopsy report determined that Mr. Pope's death was caused by blunt impact injuries to his head." App. at 158. Similarly, Mr. Abhyankar alleges that "[w]ithout any provocation . . . Defendant Rosario-Perez picked Plaintiff up by his throat, lifted him up into the air and slammed him onto the cement pavement headfirst, fracturing Plaintiff's skull and causing catastrophic injuries." App. at 194. From these allegations, which we must accept for this purpose, Mr. Pope and Mr. Abhyankar's injuries were causally linked to an assault and battery. *See Acceptance Ins. Co. v. Seybert*, 757 A.2d 380, 383 (Pa. Super. 2000) ("the Complaint contains no allegations that Seybert's actual injuries were caused in any way other than by assault and battery by the five men in the Monroe parking lot."). [7]

---

[7] The defendants argue that our facts are more analogous to *Britamco Underwriters, Inc. v. Weiner*, 636 A.2d 649 (Pa. Super. 1994) and *QBE Ins. Corp. v. M & S Landis Corp.*, 915 A.2d 1222 (Pa. Super. 2007), where the Pennsylvania Superior Court rejected the applicability of assault and battery exclusions. But the underlying complaints in those cases introduced greater ambiguity about whether the plaintiffs' injuries were caused by an assault and battery. In *Britamco*, the plaintiff was struck in the neck by employees of the bar, but his complaint referred

Although Mr. Pope and Mr. Abhyankar's injuries were caused by an assault and battery, we must continue our inquiry because the underlying plaintiffs primarily ground their claims against Mainline and Mikey II in theories of negligence. Specifically, the Pope complaint lists a variety of claims against Mikey II and Mainline under the theme of these establishments acting with "negligent, careless, wanton, and reckless disregard for Eric Pope's safety." App. at 166-170. Similarly, the Abhyankar complaint pleads a host of negligence claims against Mainline under the theme of Mainline acting "negligent, reckless, wrongful, and careless" towards Mr. Abhyankar. App. at 348-354.

In analyzing whether CSU's assault and battery exclusion encompasses these claims, we find *QBE Ins. Corp. v. Walters*, 148 A.3d 785 (Pa. Super. 2016) most instructive. In that case, the underlying plaintiff Jalil Waters attended Jazzland Bar, where a hostile patron named Eric Chambers shot Mr. Walters in the stomach and arm. *Id*. at 786. Mr. Walters then sued OK Café (the operator of Jazzland), arguing that OK Café negligently allowed Mr. Chambers to enter and exit the bar while armed, and failing to ensure Mr. Walters' safety. Mr. Chambers additionally alleged that OK Café failed to properly employ, train, and supervise its employees regarding the safety of its patrons, or take sufficient precautions to protect Mr. Walters from Mr. Chambers. *Id.* at 787. Following initiation of the suit, OK Café's insurer QBE sought a declaratory

---

to the incident as an "accident." *Britamco*, 636 A.2d at 652. Similarly in *Landis*, the plaintiff alleged not that he was assaulted but rather that he was "negligently restrained [by the bar employees] or improperly restrained [] causing his death." *Landis*, 915 A.2d at 1225-26. In contrast here, the Pope and Abhyankar complaints do not meaningfully dispute that an assault and battery took place: both allege their attacks occurred without provocation and they are bringing causes of action for assault and battery against Mr. Frye and Mr. Rosario-Perez respectfully. *See* App. at 172-73, 198-99.

judgment that they were not obligated to defend or indemnify OK Café because of an assault and

battery exclusion in their policy which read in part:

This insurance does not apply to:

* * *

(1) "Bodily injury," . . . arising from the following:

(a) "assault and battery" or any act or omission in connection with the prevention
or suppression of such acts . . .
* * *

"Assault and Battery" means:

(a) actual or threatened assault or battery whether caused by or at the
instigation or direction of any insured, his "employees," patrons or any
other persons; or

(b) the failure of any insured or anyone else for whom any insured is
legally responsible to prevent or suppress assault; or

(c) battery; or

(d) the negligent:

i. employment;

ii. investigation;

iii. supervision;

iv. training;

v. retention

of a person for whom any insured is or ever was legally responsible and
whose conduct is described in (a), (b), (c) and (d) above.

(e) the alleged failure of the insured or his officers, "employees," agents or
servants to attempt to prevent, bar or halt any such conduct.

*Id.* at 789. The trial court granted summary judgment in favor of QBE and the Superior Court

12

affirmed.  Central to the Superior Court's conclusion was that QBE's policy exclusion contained a "comprehensive and expansive" definition of assault and battery, which "include[d] negligent conduct on the part of the insured or its employees that directly harms another person, whether through negligent failure to prevent an assault, negligence related to an actual or threatened assault, or negligence resulting in battery." *Id.* at 791.  Therefore, claims alleging such conduct were excluded from coverage.[8]  *Id.*

Here, like in *Walters*, CSU's policy exclusion is not limited to claims alleging assault and battery but also "The failure of any insured . . . to prevent or suppress assault or battery . . . The failure to provide an environment safe from assault or battery . . . The failure to render or secure medical treatment or care necessitated by any assault or battery . . . The negligent investigation or reporting or failure to report any assault or battery to proper authorities; or . . . The negligent: a. Employment; b. Supervision; c. Training; d. Retention; of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by the ASSAULT OR BATTERY exclusion above."  App. at 656.  Reading these provisions in comparison with the negligence claims in the Pope and Abhyankar complaints, we conclude that the exclusion covers their allegations.

To further illustrate the principle at work here, below is a table showing how the specific negligence allegations in the Pope complaint are encompassed within the language of the assault and battery exclusion.  Similar tables could have been made for the Popes' negligence

---

[8] The Superior Court specifically distinguished the case from *Landis* — defendant's favored case — on the grounds that QBE's policy contained a much broader assault and battery exclusion which "place[d] negligent conduct contributing to an assault and battery under the 'arising from' umbrella."  *Walters*, 148 A.3d at 791.

allegations against Mikey II and for Mr. Abhyankar's allegations against Mainline. To be sure, this is not an exact science: reasonable minds can differ in matching a specific negligence claim to its corresponding phrase in the assault and battery exclusion. But the broader point is that all these negligence allegations are covered by the assault and battery exclusion.

| Allegation in the Popes' Complaint Against Mainline (App. at 308-311) | Language from Assault and Battery Exclusion Encompassing this Allegation (App. at 656) |
|---|---|
| a. punching a vulnerable and defenseless Eric Pope in the head with sufficient force to make his head strike the pavement and knock him unconscious | An actual or threatened assault or battery whether caused by or at the instigation or direction of any insured, their employees, patrons or any other person |
| b. failing to timely render or summon aid to Mr. Pope | The failure to render or secure medical treatment or care necessitated by any assault or battery |
| c. failing to use reasonable care to protect Mr. Pope from being physically harmed by Kenneth Frye at Tabu | The failure of any insured or anyone else for whom any insured is legally responsible to prevent or suppress assault or battery |
| d. failing to use reasonable care to protect Mr. Pope from being punched in the head by Kenneth Frye at Tabu | The failure of any insured or anyone else for whom any insured is legally responsible to prevent or suppress assault or battery |
| e. failing to use reasonable care to protect Mr. Pope from Kenneth Frye's negligent conduct at Tabu[9] | The negligent . . . Supervision . . . of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by the ASSAULT OR BATTERY exclusion above. |
| f. failing to use reasonable care to protect Mr. Pope from Kenneth Frye's intentional conduct at Tabu | The negligent . . . Supervision . . . of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by the ASSAULT OR BATTERY exclusion above. |

[9] This claim is closest to falling outside the assault and battery exclusion since it characterizes Mr. Frye's conduct as negligent as opposed to committing an assault. But we must be cautious of "artful pleading designed to present intentional acts as accidental for purposes of insurance coverage" *Erie Ins. Exch. v. Moore*, 228 A.3d 258, 269 (Pa. 2020) and here the facts of the pleading (taken as true) overwhelmingly convey that Mr. Frye committed an assault.

14

| | |
|---|---|
| g. failing to use reasonable care to protect Mr. Pope from an assault / battery by a security guard at Tabu | The failure of any insured or anyone else for whom any insured is legally responsible to prevent or suppress assault or battery |
| h. failing to anticipate that the security guards that it furnished to Tabu posed an unnecessary risk of physically attacking a patron | The failure to provide an environment safe from assault or battery, including but not limited to the failure to provide adequate security, or failure to warn of the dangers of the environment that could contribute to assault or battery |
| i. failing to exercise reasonable care in the performance of its contractual obligations with Mikey II | The failure to provide an environment safe from assault or battery, including but not limited to the failure to provide adequate security, or failure to warn of the dangers of the environment that could contribute to assault or battery |
| j. failing to exercise reasonable care in performing the services it undertook to render to Mr. Pope, which it should have recognized were necessary for his protection, including to provide oversight and crowd control and otherwise ensure his safety | The failure to provide an environment safe from assault or battery, including but not limited to the failure to provide adequate security, or failure to warn of the dangers of the environment that could contribute to assault or battery |
| k. failing to exercise reasonable care to secure Mr. Pope's safety while he was within defendant's charge | The failure to provide an environment safe from assault or battery, including but not limited to the failure to provide adequate security, or failure to warn of the dangers of the environment that could contribute to assault or battery |
| l. failing to exercise reasonable care to assist Mr. Pope in leaving the sports bar and getting home safely | The failure to provide an environment safe from assault or battery, including but not limited to the failure to provide adequate security, or failure to warn of the dangers of the environment that could contribute to assault or battery |
| m. failing to exercise reasonable care to prevent further harm to Mr. Pope, having caused such bodily harm to him as to make him helpless and in danger of further harm | The failure to provide an environment safe from assault or battery, including but not limited to the failure to provide adequate security, or failure to warn of the dangers of the environment that could contribute to assault or battery |
| n. failing to ensure that the security guards working at Tabu, including Kenneth Frye, were properly trained, certified, and compliant with the Philadelphia Bouncer Code | The negligent . . . Supervision . . . of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by the ASSAULT OR BATTERY |

15

| | exclusion above. |
|---|---|
| o. failing to ensure that the security guards working at Tabu, including Kenneth Frye, were properly trained, certified, and compliant with the Pennsylvania Department of State | The negligent . . . Supervision . . . of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by the ASSAULT OR BATTERY exclusion above. |
| p. failing to provide adequate security to patrons of Tabu on April 15-16, 2022 | The failure to provide an environment safe from assault or battery, including but not limited to the failure to provide adequate security, or failure to warn of the dangers of the environment that could contribute to assault or battery |
| q. failing to train, supervise, or monitor Kenneth Frye | The failure to provide an environment safe from assault or battery, including but not limited to the failure to provide adequate security, or failure to warn of the dangers of the environment that could contribute to assault or battery |
| r. failing to train, supervise, or monitor Kenneth Frye to ensure that he immediately called emergency medical services after Mr. Pope was physically harmed | The failure to provide an environment safe from assault or battery, including but not limited to the failure to provide adequate security, or failure to warn of the dangers of the environment that could contribute to assault or battery |
| s. failing to train, supervise, or monitor the security guards at Tabu to ensure that they immediately called emergency medical services after Mr. Pope was physically harmed | The failure to provide an environment safe from assault or battery, including but not limited to the failure to provide adequate security, or failure to warn of the dangers of the environment that could contribute to assault or battery |
| t. failing to provide adequate medical assistance, or summon emergency medical assistance, to Mr. Pope when he was injured | The failure to render or secure medical treatment or care necessitated by any assault or battery |
| u. failing to control the conduct of Kenneth Frye | The failure to provide an environment safe from assault or battery, including but not limited to the failure to provide adequate security, or failure to warn of the dangers of the environment that could contribute to assault or battery |
| v. failing to enforce its policy that security guards did not physically attack patrons at Tabu | The failure to provide an environment safe from assault or battery, including but not limited to the failure to provide adequate security, or failure to warn of the dangers of |

| | the environment that could contribute to assault or battery |
|---|---|
| w. failing to prevent Kenneth Frye's negligent and intentional conduct at Tabu | The failure to provide an environment safe from assault or battery, including but not limited to the failure to provide adequate security, or failure to warn of the dangers of the environment that could contribute to assault or battery |
| x. consciously disregarding the significant risks, of which it was or should have been aware, that one of its guards would intentionally harm a Tabu patron | The failure to provide an environment safe from assault or battery, including but not limited to the failure to provide adequate security, or failure to warn of the dangers of the environment that could contribute to assault or battery |
| y. permitting dangerous security guards under their control and authority to interact with patrons at Tabu | The failure to provide an environment safe from assault or battery, including but not limited to the failure to provide adequate security, or failure to warn of the dangers of the environment that could contribute to assault or battery |
| z. failing to take reasonable measures to deter physical harm or acts of violence in or just outside of Tabu's premise | The failure to provide an environment safe from assault or battery, including but not limited to the failure to provide adequate security, or failure to warn of the dangers of the environment that could contribute to assault or battery |
| aa. breaching its duty of care to business invitees of Tabu such as Mr. Pope | The failure to provide an environment safe from assault or battery, including but not limited to the failure to provide adequate security, or failure to warn of the dangers of the environment that could contribute to assault or battery |
| bb. failing to exercise reasonable care to secure Mr. Pope's safety while he was within defendant's charge | The failure to provide an environment safe from assault or battery, including but not limited to the failure to provide adequate security, or failure to warn of the dangers of the environment that could contribute to assault or battery |
| cc. failing to exercise reasonable care to assist Mr. Pope in leaving the sports bar and getting home safely | The failure to provide an environment safe from assault or battery, including but not limited to the failure to provide adequate security, or failure to warn of the dangers of the environment that could contribute to |

|  | assault or battery |
|---|---|
| dd. failing to timely render first aid to Mr. Pope | The failure to render or secure medical treatment or care necessitated by any assault or battery |
| ee. negligently hiring Kenneth Frye | The negligent . . . Employment . . . of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by the ASSAULT OR BATTERY exclusion above. |
| ff. negligently training Kenneth Frye | The negligent . . . Training . . . of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by the ASSAULT OR BATTERY exclusion above. |
| gg. inadequately vetting Kenneth Frye | The negligent . . . Employment . . . of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by the ASSAULT OR BATTERY exclusion above. |
| hh. instituting inadequate policies and procedures for hiring and training personnel | The failure to provide an environment safe from assault or battery, including but not limited to the failure to provide adequate security, or failure to warn of the dangers of the environment that could contribute to assault or battery |
| ii. failing to enforce and comply with policies and procedures for hiring and training personnel | The failure to provide an environment safe from assault or battery, including but not limited to the failure to provide adequate security, or failure to warn of the dangers of the environment that could contribute to assault or battery |
| jj. creating dangerous conditions on premises it controlled | The failure to provide an environment safe from assault or battery, including but not limited to the failure to provide adequate security, or failure to warn of the dangers of the environment that could contribute to assault or battery |
| kk. acting negligently under the circumstances | The failure to provide an environment safe from assault or battery, including but not limited to the failure to provide adequate security, or failure to warn of the dangers of the environment that could contribute to assault or battery |

| ll. failing to exercise reasonable care to fulfill duties it owed to Mr. Pope | The failure to provide an environment safe from assault or battery, including but not limited to the failure to provide adequate security, or failure to warn of the dangers of the environment that could contribute to assault or battery |
|---|---|
| mm. creating and permitting a foreseeable risk of harm to business invitees | The failure to provide an environment safe from assault or battery, including but not limited to the failure to provide adequate security, or failure to warn of the dangers of the environment that could contribute to assault or battery |
| nn. such other acts of negligence as shall be revealed during the course of discovery pursuant to the Pennsylvania Rules of Civil Procedure. | The failure to provide an environment safe from assault or battery, including but not limited to the failure to provide adequate security, or failure to warn of the dangers of the environment that could contribute to assault or battery |

Because all the claims in the Pope and Abhyankar lawsuits are covered by CSU's assault and battery exclusion, CSU's duty to defend and indemnify Mainline and Mikey II is limited to the $250,000 supplemental coverage. And because this $250,000 has been fully eroded through the payment of defense costs and settlements from other claims (App. at 975-77, 984), CSU has no duty to defend or indemnify Mainline or Mikey II for the Pope and Abhyankar lawsuits.[10]

**B.    CSU's coverage is not illusory**

Pennsylvania recognizes illusory coverage when an insurance company receives a premium for "coverage that, in effect, will not attach by virtue of an exclusion." *Heller v.*

---

[10] CSU admits that their original exhaustion calculations were incorrect, and that Mainline was still entitled to $4,843 in coverage for assault and battery claims. *See* DI 76 at 9 n.1. CSU has since remedied this issue by sending Mainline $4,843 for use in either the Pope or Abhyankar lawsuits. *See* App. at 985-87. Mainline, the Popes, and Mr. Abhyankar do not contest this nor do they put forward any evidence challenging that the $250,000 has been eroded. Thus, there is no genuine issue of material fact that CSU's coverage for assault and battery claims has been exhausted.

*Pennsylvania League of Cities & Municipalities*, 32 A.3d 1213, 1223 (Pa. 2011). This tends to be a fact-specific inquiry. *Id.* Coverage is not illusory simply because of a potentially wide exclusion. Rather, the policy must "not pay benefits under any reasonably expected set of circumstances." *Atl. Cas. Ins. Co. v. Zymblosky*, No. 1167 MDA 2016, 2017 WL 3017728, at *6 (Pa. Super. Ct. July 17, 2017) (quoting *TIG Ins. Co. v. Tyco International Ltd*., 919 F. Supp. 2d 439, 466 (M.D. Pa. 2013)).

Here, the Popes and Mr. Abhyankar contend that CSU's policy is illusory because Mainline paid close to $300,000 in premiums while the assault and battery exclusion effectively capped Mainline's coverage at $250,000. *See* DI 79-12 at 24 (ECF); App. at 718, 802-803. In making this argument, the underlying plaintiffs rely on *Heller v. Pennsylvania League of Cities & Municipalities*, 32 A.3d 1213 (Pa. 2011). That case involved an insurer — Pennsylvania League of Cities and Municipalities t/d/b/a Pennsylvania Pooled Risk Insurance for Municipal Entities a/k/a Penn PRIME Trust (Penn PRIME) — which provided underinsured motorist (UIM) coverage to government employees. Notably, Penn Prime was obligated by Pennsylvania's Motor Vehicle Financial Responsibility Law (MVFRL) to offer UIM coverage in every policy, although the insured could decline to purchase such coverage. *Id.* at 1219; *see also* 75 Pa. C.S. § 1731(a). In *Heller*, the Sugarcreek Burrough purchased UIM insurance from Penn PRIME of up to $100,000 per accident, but the policy excluded UIM coverage for claims by employees eligible for workers' compensation benefits. *Id.* at 1222-23. The court found this exclusion violated the public policy underlying the MVFRL because the vast majority of Borough employees were eligible for workers' compensation, and thus "the exclusion operate[d] to convert Penn PRIME's statutory obligation into a sham offering." *Id.* at 1223.

20

The facts of our case share little in common with *Heller*. First, CSU was under no statutory obligation to offer insurance to Mainline. To the contrary, as referenced above, CSU provides insurance of last resort to companies that cannot obtain coverage in the traditional marketplace. The Popes and Mr. Abhyankar cite no cases under Pennsylvania law recognizing illusory coverage in this context, and we must exercise caution in expanding this doctrine's reach. As the Pennsylvania Supreme Court instructs, "In the absence of a plain indication of [public] policy through long governmental practice or statutory enactments, or of violations of obvious ethical or moral standards, the Court should not assume to declare contracts . . . contrary to public policy. The courts must be content to await legislative action." *Burstein v. Prudential Prop. & Cas. Ins. Co.,* 809 A.2d 204, 207 (Pa. 2002) (citation modified).

Even if we accept that illusory coverage could exist here, CSU's assault and battery exclusion is significantly more tailored than the exclusion in *Heller*. First, as referenced in the facts section, CSU provided additional coverage — of up to $1 million — for bodily injury arising out of assault and battery at select bars requested by Mainline. App. at 564-68, 851-54. Second, the exclusion does not limit coverage for bodily injury or property damage arising out of other types of claims. For example, CSU covered a claim under its general liability policy against Mainline and the bar Bru Craft & Wurst (Bru) where the underlying plaintiff alleged that she was injured in a car crash after being overserved at Bru. *See* App. at 996-1012. Thus, because CSU's policy pays benefits under some reasonably expected circumstances, there is no genuine dispute as to whether their coverage is illusory.[11] *See Westfield Ins. Co. v. Astra Foods*

---

[11] We also find it significant that Mainline — the actual policyholder — is not arguing that

*Inc.*, 134 A.3d 1045, 1054 (Pa. Super. 2016) ("[B]ecause Westfield Insurance was not required to offer coverage to Astra for personal injury claims . . . and the leased worker exclusion does not operate to foreclose the vast majority of Astra's expected claims, we decline to hold the CGL Policy illusory."); *Zymblosky*, 2017 WL 3017728, at *7 ("Even assuming, *arguendo,* that the pollution exclusion is a potentially wide exclusion, the coverage still is not illusory because it will provide coverage under other reasonably expected sets of circumstances."). Thus, we cannot agree with defendants' argument that CSU's coverage is illusory.

## V.    CONCLUSION

For the foregoing reasons, CSU's motion for summary judgment is granted. An appropriate order with the declaratory judgment follows. In summary, the allegations in the Pope and Abhyankar lawsuits fall entirely within the assault and battery exclusion of CSU's policy coverage. Additionally, the $250,000 limit in coverage for these claims has been exhausted, and therefore CSU is not obligated to defend or indemnify Mainline or Mikey II in the Pope and Abhyankar lawsuits.

---

CSU's policy is illusory.